[Civ. No. 1108.   Third Appellate District.—August 28, 1913.

ALICE C. LYNCH, as Executrix of the Last Will and Testament of Alice M. Lynch, Deceased, Appellant, v. JAMES K. LYNCH et al., Respondents.

MORTGAGE—DEED ABSOLUTE—ACTION TO DETERMINE WHETHER GIVEN AS SECURITY OR ABSOLUTE CONVEYANCE.—Where the evidence, in an action to have a deed absolute on its face declared to be a mortgage, is conflicting, the determination of the trial court that an absolute conveyance was intended will not be disturbed on appeal.

ID.—INCONSISTENCIES AND CONFLICT IN EVIDENCE—PROVINCE OF APPELLATE COURT.—On appeal, if there appears to be substantial and reliable evidence which is sufficient to uphold the findings, any contradictory evidence which may have been introduced into the record,

or any inconsistencies in the testimony of individual witnesses which may have been disclosed, lose their importance or significance in the determination of the controversy; the presumption being that the trial court or the jury, as the case may be, regarded the contradictory evidence as possesssing no weight or persuasive force, and reconciled to its own satisfaction the inconsistencies or discrepancies which might have been made to appear in the testimony of certain witnesses produced by the side in favor of which the findings have gone.

ID.—CREDIBILITY AND SUFFICIENCY OF EVIDENCE—PROVINCE OF TRIAL COURT.—It is within the legal right of those to whom the decision of questions of fact is committed by law to believe a part only of a witness's testimony, and reject other portions of it; and, if the part which has evidently been accepted is sufficient to sustain or support the conclusion upon the ultimate facts, such conclusion cannot on appeal be disturbed merely because of seeming inconsistencies or apparent weaknesses in certain portions of such testimony.

ID.—ADEQUACY OF CONSIDERATION—CONFIDENTIAL RELATION OF PARTIES. Where to the circumstance of inadequacy of consideration is added the circumstance that the parties to the transaction stand in a confidential relation toward each other, or are so connected in blood as that the presumption arises that such a relation exists between them, a case for the invalidation of the transaction is, in the eyes of a court of equity, well-nigh complete; but, like any other question of fact, the trial court's decision thereon is conclusive upon a court of review, unless it can justly be said by such court to be erroneous as a matter of law.

ID.—CONSIDERATION—WHETHER SO INADEQUATE AS TO RAISE PRESUMPTION.—In a suit to declare that a deed absolute on its face was intended as a mortgage, the fact that the land was perhaps worth seven dollars an acre, whereas it sold for only five dollars, does not justify an appellate court in holding, as a matter of law, that the consideration is so inadequate as to raise the inference that the deed was intended merely as a mortgage and not as a transfer of title to the property.

ID.—RELATIONSHIP OF PARTIES—WHETHER RAISES PRESUMPTION.—The fact that the parties to the deed were father and son does not raise the presumption that the deed was not intended as an absolute conveyance of title.

APPEAL from a judgment of the Superior Court of San Luis Obispo County. W. M. Finch, Judge presiding.

The facts are stated in the opinion of the court.

Theo. A. Bell, and Lamy & Putnam, for Appellant.

C. P. Kaetzel, for Respondents.

HART, J.—The purpose of this action is to secure a decree declaring and adjudging that a certain deed, executed by one James Lynch, and purporting to convey absolutely to the defendant, J. K. Lynch, a certain tract of land situated in the county of San Luis Obispo, to be and to have been in fact intended by the parties thereto to operate as a mortgage only.

The complaint sets out in detail the facts attending the transaction which resulted in the execution and delivery of the deed in question by James Lynch to James K. Lynch, the grantor and grantee being, respectively, father and son, and, by appropriate averments, declares that said instrument was intended to have the effect of a mortgage only, and that such was understood to be its sole purpose by both the grantor and the defendants (both sons of James Lynch) at the time of its execution and delivery.

The issues tendered by the complaint were met by the defendants by answer, wherein, by way of admissions of certain averments of the complaint, they assert that the deed in question was intended as an absolute conveyance of the property.

The evidence was submitted to a jury, sitting in an advisory capacity, and to them the court submitted two particular questions of fact which involved a statement, interrogatively, of the ultimate issue of fact tendered by the pleadings. These questions and the answers returned thereto by the jury are as follows: 1. "Was it intended by said James Lynch, the father, and these defendants, by said conveyance, to convey the absolute ownership of and legal title to said lands?" Answer: "Yes." 2. "Was it intended by the father, James Lynch, and these defendants that the payment of said sum of $3,243.00 to the San Francisco Savings Union constituted a loan which said James Lynch was under legal obligation to repay?" Answer: "No."

The court adopted the answers so returned and found that the deed purporting to convey the land in dispute to James K. Lynch was not intended by the grantor, James Lynch, father of James K., as a mortgage to secure the repayment of said moneys advanced by said James K. and his brothers,

Henry W. and Frank Lynch, to their father, but "that it was intended by said James Lynch and the defendants, James K. and Henry W., that title to all of said 579 acre tract in fee simple should pass to defendant, James K. Lynch, by said deed; for himself and said Henry W. Lynch and Frank Lynch, however, in the proportions in which they contributed to the purchase price thereof, to wit: James K. Lynch, $2,000.00; Henry W. Lynch, $621.50, and Frank Lynch, $621.50. That it was verbally agreed between said James Lynch and his said three sons at the time of the execution of said deed that said James Lynch and Alice M. Lynch (father and mother of the defendants) should have the use and occupation of said lands during their lifetime and the lifetime of each of them."

This appeal is brought here by the plaintiff from the judgment entered upon the findings of the court, the record having been made up under sections 953a, 953b, and 953c of the Code of Civil Procedure.

It is claimed for a reversal of the judgment that the evidence is insufficient to support the findings upon which it is planted and that the court committed a number of prejudicial errors in its rulings upon the evidence.

The evidence from which the court made its findings, and which we are convinced amply supports them, discloses the following facts: James Lynch and Alice M. Lynch were husband and wife and were the parents of the plaintiff, two other daughters, the defendants and Frank Lynch. On December 6, 1909, James Lynch died testate, in the county of San Luis Obispo, of which for many years he had been a resident and in which he left estate consisting of real and personal property. By his last testament, he left all his estate to his wife and made her the executrix of his will. On the tenth day of March, 1911, his widow, Alice M. Lynch, died testate in the city of San Francisco, leaving estate in the county of San Luis Obispo, of which she was a resident at the time of her death. In her will she named the plaintiff as the executrix thereof, and the latter in due time was regularly and legally invested with the powers and duties of that office.

During his lifetime, James Lynch was the owner of a large body of land stiuated in the county of San Luis Obispo, and it appears that, previously to the beginning of the transac-

tion concerned in this litigation, he had borrowed from the San Francisco Savings Union, a banking concern in the city of San Francisco, a large sum of money, to secure the repayment of which he executed to and in favor of said bank a mortgage upon all said land. This land he used for agricultural and stock raising purposes. Having met with reverses in the management of his business as a farmer and stock raiser after negotiating the loan above mentioned, the year 1892 found his affairs in such condition that he was unable to meet the interest obligations which had accrued upon his indebtedness and his financial embarrassment consequent thereupon so discouraged him that he finally concluded to allow the bank to sell his land upon which it had the mortgage and thus realize the sum total of his indebtedness to it. The defendants, James K. and Henry W. Lynch, discussed the situation with him and endeavored to persuade him to make an effort to meet his obligations, so far as the interest was concerned, and so prevent his extensive holdings from being sacrificed through a forced sale thereof.

James Lynch and his wife then resided on a tract of one hundred and sixty acres of land. This was known as the "home place," and upon it the wife of James had filed a homestead. Adjoining the "home place" is the tract of land involved in this controversy.

In the year 1892, the defendant, Henry W. Lynch, went to San Francisco, where the defendant, James K. Lynch, was then connected in an official capacity with the First National Bank, and held a conversation with the latter concerning their father's financial condition and embarrassment, the object thereof being, if possible, to devise some means whereby some part at least of the mortgaged lands of James could be saved from the effect of a sale thereof to satisfy the mortgage indebtedness. "He" (referring to Henry W.) "asked me," testified James K., "if I could raise the money to redeem from the mortgage or from the trust deed the land in the valley which adjoined the home place, the 160 acres; he said that he felt if father gave up all the land but 160 acres which mother had homesteaded and which had not been mortgaged that it would be impossible for him to make a living; he would have no room in which he could run his stock and he wouldn't have any land practically on which he could raise grain or

22 Cal. App.—42

any other produce, and I said to my brother that I thought it very doubtful if I could raise enough money to do it. He suggested that we find out how much it would take, so he and I together went to the San Francisco Savings Union and saw Mr. Lovell White, who was the cashier of the bank, and asked him what sum he would take to release this land from the trust-deed.'' The amount which it was thus found necessary to pay the bank to release the land in question from the lien of the mortgage or trust deed was $3243.00, of which some one thousand four hundred dollars was for interest already accrued on James Lynch's indebtedness. ''Regarding the raising of the money,'' continued the testimony of James K., ''it wasn't very easy to raise at the time. I had, in fact, no money of my own available. There was a lot that I had given to my wife some years previously, shortly after we were married, which had enhanced considerably in value and had just been sold and the proceeds of this lot were going into a home we were building in Alameda. I said I would ask my wife if she would consent to using two thousand dollars of this money to help father and mother out of the trouble they were in and give them the use of this land. She said she would be very willing to do so. So I told Henry that I would furnish two thousand dollars if he and Frank between them would raise the balance, which he said he thought they would be able to do. And shortly thereafter they both—my impression is that Frank at that time was in the San Joaquin Valley on the Pinoche Ranch—at any rate I don't recall his being present. He was probably corresponded with. At any rate, I paid the money and a short time after Henry and Frank reimbursed the amounts that they had promised. So, with the three dollars, the charge they made for the reconveyance, the total amount paid was $3,243.00, which was contributed in the proportions mentioned, $2,000.00 by myself and $621.50 each by Frank and Henry.''

On the thirteenth day of October, 1892, and shortly after the land in dispute was released from the mortgage lien as above explained, James Lynch executed and delivered to James K. Lynch the deed conveying to him the fee-simple title to said land.

James K. testified that said conveyance was made to him in consideration of the money paid by him and his brothers,

Henry W. and Frank, to free the land in question from the burden of the mortgage, and that an oral agreement was then had between himself, brothers, and father that the last named and his wife (mother of the defendants) should have, without compensation therefor, the sole and exclusive use of the land during their joint lives and during the life of the survivor upon the death of the other, the parents, however, to pay the taxes assessed against the land. Upon the death of both parents, the land was then to be divided between the grantee and his brothers, Henry W. and Frank, in proportion to the amount each contributed toward the sum paid for the same, it having been orally agreed and understood by all the parties at the time of the execution and delivery of the deed that James K., the named grantee, should hold the interests of Henry W. and Frank in said land in trust for them until the death of both their father and mother.

Henry W. Lynch supported the testimony of James K., as above epitomized, in all essential particulars. Henry lived near the home of his father and mother during all the years from the time of the execution of the deed in question up to the time of his mother's death. The negotiations resulting in the execution of the deed were carried on, mainly between him and his father, James K., as seen, being a resident of San Francisco. Henry further testified that at no time after the execution and delivery of the deed did his father question the transaction as one involving an absolute sale of the land to the three sons. He also stated that he improved the land by building thereon a water-dam, that his father saw the work of constructing it in progress and never made any objection to the improvement or raised any question as to Henry's right to make it. Henry further testified that he purchased a tract of land adjoining the land in controversy, the two tracts being separated by a division fence, and that he removed said fence and thus converted the two tracts into one; that his father had knowledge of that circumstance and made no protest against it. He declared that the money contributed by him toward the purchase of the land he had borrowed from a relative, and that for nineteen years he paid eight per cent interest on the loan.

But it is not deemed necessary to refer further in detail to the testimony of James K. and Henry W. Lynch. As stated

in the beginning, it is very clear, from their testimony, that the trial court, giving, as obviously it did, full credit to said testimony, was justified in concluding that the conveyance to James K. Lynch was intended by all the parties to the transaction culminating in the execution and delivery of the deed as an absolute sale and conveyance of the land.

There is, it is true, some evidence in the record contradictory to the theory that the deed was intended as an absolute transfer of the fee in the land to James K. But the matter of contradictory evidence and that of any statements shown to have been made by the defendants themselves which appear to be inconsistent with the claim that the instrument was intended to operate as an absolute transfer of the land to James K., were, of course, for the trial court to pass upon and settle. As is said in *Wadleigh* v. *Phelps,* 149 Cal. 627, [87 Pac. 93] : ". . . This question of fact, like all other questions of fact, is one for the trial court. All questions as to preponderance and conflict of evidence are for the trial court. To the extent that its determination rests upon the mere preponderance of evidence, or upon the consideration of conflicting or contradictory evidence, the findings of the trial court are not open to review in this court." And the same is no less true as to inconsistent statements of the witnesses themselves or statements either in real or apparent conflict with other portions of their testimony, which go to their impeachment. On appeal, if, as is true here, there appears to be substantial and reliable evidence which is sufficient to uphold the findings, any contradictory evidence which may have been introduced into the record or any inconsistencies in the testimony of individual witnesses which may have been disclosed, lose their importance or significance in the determination of the controversy, the presumption being that the trial court or the jury, as the case may be, regarded the contradictory evidence as possessing no weight or persuasive force and reconciled to its own satisfaction the inconsistencies or discrepancies which might have been made to appear in the testimony of certain witnesses produced by the side in favor of which the findings have gone. Of course, it will not be disputed that it is within the legal right of those to whom the decision of questions of fact is committed by law to believe a part only of a witness's testimony and reject other

portions of it, and if the part which has evidently been accepted is sufficient to sustain or support the conclusion upon the ultimate facts, such conclusion cannot on appeal be disturbed merely because of seeming inconsistencies or apparent weaknesses in certain portions of such testimony.

But the further point is urged that the consideration for the land was shown to have been inadequate when compared to its actual value at the time of the transfer and that this circumstance, viewed in connection with certain declarations which were shown to have been made by the defendants in opposition to the theory that the conveyance involved an absolute transfer of the property and considered also in connection with the fact that the parties sustained the relation of parent and children, from which relationship the presumption arises that, in the transaction, a confidential relation subsisted between them, was sufficient to turn the scale in favor of the theory that the deed was intended not as a transfer of the land but to have the effect only of a lien to secure to the defendants reimbursement for the money advanced by them to their father. Inadequacy of consideration, where shown, is an element which is always given great weight by courts of equity in determining whether a transaction involving the transfer of valuable property by one to another is unconscientious or constructively fraudulent or, perhaps, as tending to prove actual fraud. Indeed, it has always been looked upon by such courts as sufficient to create a strong suspicion that the transaction has not been characterized by good faith in the party securing benefits thereby and to cast upon him the burden of making it perfectly clear that it was in all respects honest and fair and just to the grantor. And where to the circumstance of inadequacy of consideration is added the circumstance that the parties to the transaction stand in a confidential relation toward each other or are so connected in blood as that the presumption arises that such a relation exists between them (*Nobles* v. *Hutton,* 7 Cal. App. 14, [93 Pac. 289], and cases therein cited on page 23), a case for the invalidation of the contract or transaction is, in the eyes of a court of equity, well-nigh complete. These questions, however, like all other questions of fact, must be determined by the trial court, and they are as far removed from the competence of this court to review as are any other questions of

fact, and the trial court's decision thereon is conclusive upon a court of review unless it can justly be said by such court that, as a matter of law, it is erroneous. In the case at bar, we cannot say that the evidence shows that the consideration for which the land was sold was not, under all the circumstances, approximately equal to the value of said land. The defendants testified that the land was not worth more than seven dollars per acre. Much of the land owned by their father in San Luis Obispo County, they testified, was purchased by the former for five dollars per acre. Figuring the value of the land in dispute at seven dollars per acre, however, it is to be noted that the sum paid by the defendants for said land was a trifle over eight hundred dollars less than the value of the land. This difference between the price paid and the actual value of the land cannot, as before stated, justify this court in holding, as a matter of law, that the consideration was so inadequate as to raise the presumption of fraud on the part of the defendants in the transaction or operate as a basis for the inference that the deed was intended merely as a mortgage and not as a transfer of the title to the land. But as to the disparity between the price paid and the real value of the land, as appraised by the defendants, it is perhaps true that the trial court and the jury took into consideration the fact that the agreement was that the grantor and his wife were to have the sole use of the land, free of any rent charge, during their lives and the life of the survivor, and that the carrying out of this agreement for a period of about nineteen years was more than sufficient to make up the difference between the consideration which actually passed from the defendants to their father and the value of the land as it was estimated to be worth by the defendants. At any rate, as before declared, we have discovered no substantial reason for holding that the consideration was so inadequate as to raise any presumption against the validity of the transaction as one involving the absolute transfer of the fee in the land to James K. Lynch. Nor can the fact that the parties to the deed were father and son and that their relation in the transaction may, therefore, be regarded as confidential, or presumptively so, of itself operate to defeat the transfer or raise the presumption that the deed was not intended as an absolute conveyance of the title to the land.

Transactions of the character of the one here between parent and child are as legitimate as those had between strangers, and it is only where the circumstances of such a transaction between parties standing in a confidential relation toward each other disclose that the one has gained an advantage therein over the other by reason of the existence of such relation between them that a court of equity will interfere and set it aside.

We have examined the assignments involving an attack upon the rulings of the court allowing certain evidence to go into the record. It is deemed unnecessary to give said assignments special notice in this opinion. It will be sufficient to say that we are convinced, from an examination of the assignments, that the court committed no error in any of the rulings referred to, but that, even if it were true that some of the rulings were technically incorrect, the result was merely the admission of evidence which it is conceived could in no manner or measure have prejudiced the case of the plaintiff.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal, on September 27, 1913, and a petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on October 27, 1913.