[Civ. No. 4442.   Fourth Dist.   Dec. 9, 1952.]

MARTHA TRIMBLE, Respondent, v. A. B. COFFMAN, Appellant.

Arthur M. Bradley and Lloyd S. Verry for Appellant.

Harold A. McCabe, R. C. Mize and Donald J. Schumacher for Respondent.

GRIFFIN, J.—Martha Trimble, plaintiff, cross-defendant and respondent, brought this action to partition certain real property and crops growing thereon. A. B. Coffman, defendant, cross-complainant and appellant, filed an answer denying plaintiff's claimed title, and a cross-complaint seeking to cancel a deed to plaintiff, executed by his joint tenant, and alleged it was procured without consideration, by undue influence, and in violation of confidential relationship. It is also claimed that the grantor of the joint tenancy interest held such interest in trust and was not authorized to convey it.

The trial court found against defendant's several claims and in favor of plaintiff, ordered partition, entered its interlocutory decree appointing a referee, and provided a procedure to carry the decree into effect.

The evidence shows that defendant was an orange grower and had two sons. In August, 1942, he married Helen J. Scott. She was a real estate broker. At the time of marriage she owned certain personal property and an equity in some real property in Los Angeles County, which was subsequently sold. She had been ill for some time. After the marriage she underwent two operations. On May 11, 1948, she died of cancer. At the time of the marriage Mr. Coffman owned the home place where the parties lived and two other parcels of property. He sold the home place in July, 1943, and one parcel in March, 1944, for $50,000. The parties moved to a home owned by defendant in Garden Grove, which was sold in 1944. Mrs. Coffman told a broker that they would like to secure some income property. He showed them the Dunlap home located in a 10-acre orange grove in Fullerton, the property here involved. The purchase price was $35,000. As found by the court, $25,000 was paid by funds furnished by Mr. Coffman, and a note and trust deed for $10,000 was signed by both husband and wife. Title to the ranch was taken by them as joint tenants. The parties lived on the premises, worked the property, and the note was paid off from the proceeds of their crops and their efforts. Some weeks before

the death of the wife a separation occurred and the parties were trying to adjust their differences. Mrs. Coffman had prepared for her a grant deed of her one-half joint tenancy interest in the ranch property, transferring it to plaintiff, Mrs. Trimble, her sister-in-law, and signed a will on May 10, in which she recited that the deed prepared by her was for the purpose of severing the joint tenancy between her and her husband. On that same day she executed the deed and handed it to plaintiff, who immediately recorded it. On May 10, plaintiff signed an acknowledgment directed to Mrs. Coffman, reciting: ''I acknowledge that in connection with the deed to me of a one-half interest in the ranch and any funds turned over, that the same is received by me for all monies advanced for your care, or for other reasons, and to meet my expenses and trouble in looking after your affairs, and that the balance, if any, shall be turned over to your nieces and nephews in equal shares, as named in your will.''

Defendant, by his pleadings and testimony, would attach to the joint tenancy deed certain conditions predicated on certain claimed oral conversations between the parties as to the effect of the deed and the manner in which his wife's title would be held. He testified he told his wife that if they bought the property ''I will fix it from my other property and make you a will''; that during the escrow he talked it over with his wife and they agreed ''survivorship in the way of title would be better than a will,'' and ''She said in a way, survivorship required if I die it was hers and if she dies it was mine, a home for either one of us.''

Upon this testimony and the findings of the trial court, defendant claims that, as a matter of law, a resulting trust arose in favor of defendant; that accordingly, defendant's wife was unauthorized to dispose of her joint tenancy interest, and that plaintiff acquired no interest in the property other than a bare legal title. The finding relied upon in support of this conclusion recites that the purchase money, i.e., $25,000, was the separate property of Coffman and that no sum was paid by Mrs. Coffman; that ''at the time of said purchase of said property Helen J. Coffman and A. B. Coffman agreed that the parties would be owners of the property, as joint tenants, and the survivor would be the owner of the property.''

As opposed to this conclusion, the court found that by virtue of the joint tenancy deed Mrs. Coffman became the owner of an undivided one-half interest in the property; that it was not true that at the time Mr. Coffman purchased the property,

or at any time, he told Mrs. Coffman that in the event she should die before he did, all of his property should go to his children by a prior marriage; that it is not true that she agreed or promised that she would not transfer said property or any interest therein, except at the request and with the consent of Mr. Coffman, or that she would not assert any title or right of possession in said property until Mr. Coffman died, or during his lifetime, or that Mr. Coffman caused said deed to be executed by Mrs. Dunlap to said parties as joint tenants with the right of survivorship because of any oral agreement of Mrs. Coffman; that it is true that at the time of the purchase of the property Mr. Coffman and Mrs. Coffman reposed confidence in and had great respect and affection for each other; and that it is not true that by virtue of the death of Mrs. Coffman Mr. Coffman became the owner and entitled to the possession of the property. It then found as true that plaintiff and defendant are now the owners of the property as tenants in common in equal shares.

Although death has sealed the lips of the wife to contradict the testimony of the defendant, there is evidence that the money from the sale of crops was used to pay for the $10,000 note and trust deed; that they did maintain separate bank accounts as well as a bank account which was in joint tenancy; that one acquaintance testified that defendant asked her shortly after the property was purchased to "come on out and look over the property Mama and I bought . . ." Another testified defendant told him "the orange grove was community property" but the other property was not. During the separation, apparently a divorce complaint had been prepared by Mrs. Coffman and served on Mr. Coffman, who went to plaintiff's attorney and complained about the allegations pertaining to the property. According to the attorney's testimony, defendant said that "one-half of the property out there where we moved is Mrs. Coffman's . . . but the rest of the property is (mine) that I had before marriage"; that "that's our understanding about it"; that he would be willing to "pay off her half of it"; that he wrote up some kind of an agreement to this effect and that defendant signed it. Defendant denied these conversations.

Two canceled checks, totaling $3,000, endorsed by defendant and drawn on the joint account and on Mrs. Coffman's separate account, were in evidence as indicating that she may have contributed to the purchase price of the property here in question. However, the court found that they were not

directly traceable to it. It then found that defendant had not met the burden of proving the allegations of his cross-complaint as to a claimed oral agreement, and that the deceased had a title which she could and did pass by executing and delivering the grant deed.

Defendant cites such cases as *Steinberger* v. *Steinberger*, 60 Cal.App.2d 116 [140 P.2d 31]; *Huber* v. *Huber*, 27 Cal. 2d 784 [167 P.2d 708]; in relation to the claimed confidential relationship; and *Socol* v. *King*, 36 Cal.2d 342 [223 P.2d 627], which in effect holds that the existence of a resulting trust will be presumed, to the extent that a gift was not intended, in favor of one who has paid the entire purchase price of property which is conveyed to the trust claimant and another as joint tenants. The findings do recite that the entire purchase money used in the purchase of said property was the separate property of Mr. Coffman, and that no sum or amount was ever paid by Mrs. Coffman for said premises, notwithstanding the testimony that the $10,000 payment on the trust deed and note was the result of the joint efforts of the husband and wife and profits from the crops. Such findings would not, however, be conclusive evidence that a resulting trust was, in fact, created.

It probably becomes unnecessary to determine whether the property here involved was separate or community property. A community estate and a joint tenancy cannot exist in the same property at the same time, and the fact that property is held by spouses under a joint tenancy deed raises a rebuttable presumption of an intent to hold the property as joint tenants. (*Sandrini* v. *Ambrosetti*, 111 Cal.App.2d 439 [244 P.2d 742].)

It is true that upon a proper showing a resulting trust may be presumed but, as opposed to this presumption are the unconditional terms of the deed, the evidence indicating a gift, and the indication that there had been an executed oral agreement between the parties changing the character of the property. Under these circumstances there must be clear and convincing proof before a resulting trust may be declared. (*Sherman* v. *Sandell*, 106 Cal. 373 [39 P. 797]; 9 Cal.Jur., p. 388 et seq., §§ 235, 236; *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 759 [146 P.2d 905]; *Estate of Wahlefeld*, 105 Cal. App. 770, 775 [288 P. 870]; *Williams* v. *Reich*, 123 Cal.App. 128 [10 P.2d 1030]; *Rogers* v. *Rogers*, 86 Cal.App.2d 817 [195 P.2d 890]; and *Estate of Wilson*, 64 Cal.App.2d 123 [148 P.2d 390].) Whether the showing is clear and con-

vincing is primarily a question to be determined by the trial court. (*Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 173 [168 P.2d 946]; Code Civ. Proc., § 1856; Civ. Code, § 1056.)

The trial court was fully justified in finding that defendant failed to meet this burden.

If a confidential relationship did exist, as contended, the evidence does not conclusively show that the wife did make or violate any claimed agreement pertaining to the manner in which, or period for which, title was to be held by her so as to prevent her from executing the deed in question. (*Lynch* v. *Lynch,* 22 Cal.App. 653 [135 P. 1101].) The ultimate finding of the trial court that no such agreement existed is supported by the evidence and such finding will not be disturbed on appeal. (*Laherty* v. *Connell,* 64 Cal.App.2d 355 [148 P.2d 895].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.