230

[Civ. No. 22244. Second Dist., Div. Three. Nov. 14, 1957.]

ERNEST HERRMANN, Plaintiff and Appellant, v. LENA W. HERRMANN, Defendant and Appellant.

Wilbur E. Quint for Plaintiff and Appellant.

Sadler & Boerner for Defendant and Appellant.

SHINN, P. J.—We have for consideration an appeal of Lena Herrmann from a modified interlocutory decree awarding Ernest Herrmann a divorce upon the ground of cruelty and a cross-appeal by Ernest from the modified decree. Upon the appeal of Lena it is contended that there was insufficient evidence to warrant a finding that she had been guilty of conduct which caused Ernest mental or physical suffering and that she should have been awarded a divorce upon her cross-complaint which accused Ernest of cruelty. Upon his appeal Ernest contends that the court committed error in declaring that the home of the parties was owned in joint tenancy and in making findings contrary to those made originally with respect to money advanced by Lena. Neither appeal is meritorious.

The briefs of Lena do not contain an adequate statement of the evidence pertaining to the finding that she had been guilty of cruelty. This is not an unusual practice in the preparation of briefs. The apparent reason for the omission is that a full and fair statement of the evidence would have refuted the argument that it was insufficient to support the finding. The principal argument on Lena's appeal is that if Ernest suffered mentally, lost weight, became nervous and ill, and so distraught that he found it impossible to live with her, it was due to his having lost a great deal of money which he had loaned his son and not to any conduct upon her part. At the same time she contends that if the court had accorded her evidence the same weight given to the evidence of Ernest, she would have been granted a divorce. A brief statement of the evidence will suffice to show that there was substantial evidence to prove that Lena's wrongful conduct caused Ernest extreme mental suffering.

The parties were in their sixties when they intermarried in 1951, after a brief acquaintance. Each had a grown son as issue of a former marriage. Ernest was from Wisconsin, where he had done well in the manufacture of cheese. He had

an adequate income from securities and followed no occupation. Although conditions were tranquil for a time it was but a year and a half when Ernest left the nuptial bed. In another two years the parties were in court.

At the time of the marriage Ernest owned a fully furnished two bedroom house with living room, bathroom and kitchen; Lena insisted on having a larger house which Ernest bought for $21,500; title was placed in joint tenancy because Lena said that was necessary under California law. Ernest understood that the joint tenancy would "take effect" after his death. The furniture was purchased at a cost of between $6,000 and $7,000 of which Lena contributed a part.

The complaint and the cross-complaint alleged cruelty in general terms. During the trial by far the greater part of the evidence related to the financial affairs of the parties. Upon the issue of cruelty Ernest undertook to prove that he had married a shrew and Lena countered with an effort to prove she had married a miser. Both, appeals are ill advised.

In ruling upon Lena's motion for a new trial, presented by substituted counsel, the court stated: "I think your client moved in on him, and I felt, moved in on him with the deliberate intention of finding a soft place for herself, and getting all of the money or property that he had previously earned, or as much of it as she could, for herself, and her son. Now, that's the picture that, at least, I felt the evidence disclosed, and that was the basis on which the Court rendered its judgment." This was the dispassionate conclusion of a judge who had listened patiently throughout a prolonged trial and had weighed the evidence with great care and impartiality.

One incident, testified to by Ernest and his attorney, was illuminating. One morning, when Ernest left home early, Lena tried to find him at his broker's office; from there she went to the office of the attorney where Ernest was to sign a will. She burst into the private office, grabbed the will from Ernest, the attorney recovered it, adjourned to another office with Ernest and locked the door. After loudly demanding admission Lena fell to the floor, a physician was called and found nothing the matter with her. After a couple of hours when Lena refused to arise, an ambulance was called, the police came, Lena declared she would not leave until she had read the will and was led screaming to the elevator on the way to a hospital. At various times she endeavored to persuade the attorney and the brokers to influence Ernest to

place his securities in joint tenancy. There was evidence which was ample to prove Lena married Ernest for his money and made every effort to acquire a joint tenancy interest in everything he owned. There was other evidence which fully warranted the finding that Ernest was caused grievous mental suffering as a result of Lena's conduct.

In the original findings the court found that Lena had advanced to Ernest the sum of $500. Upon Lena's motion for a new trial the court found the amount of the advancement to be $2,000. This was in accord with Lena's testimony. Her motion for a new trial was denied. ■ In ruling on the motion for a new trial the court was authorized to make new or different findings and to modify the judgment. (Code Civ. Proc., § 662.)

■ Upon Ernest's appeal it is contended that it was error for the court to declare that the home was owned in joint tenancy. The theory advanced is that Ernest alleged in his answer to Lena's cross-complaint that it was his separate property, Lena alleged it was community property, and both alleged it was placed in joint tenancy as a mere matter of convenience; wherefore, it is argued, the finding was contrary to the admissions of the pleadings. The point would have been available to Ernest were it not for the fact that he tried the case on the theory that the question whether the property was in fact owned in joint tenancy was in issue. Having done so he cannot complain now. The evidence supports the finding. ■ Ernest purchased the property with separate funds and intentionally placed the title in joint tenancy, understanding that it would "take effect" after his death. This constituted presumptive evidence that he intended to make a gift to Lena of a joint tenancy interest. (*Trimble* v. *Coffman*, 114 Cal.App.2d 618, 622 [251 P.2d 81].) There was no agreement that it was to remain his separate property or that it would belong to the community.

■ The evidence presented by Lena upon the cross-complaint for divorce related principally to Ernest's fondness for wine and beer in combination with strong smelling cheese, and to his unwillingness to spend his money as freely as she wished. But he maintained a "beautiful" vegetable garden, was helpful with the housework, was on excellent terms with Lena's son and was shown to be a mild-mannered, patient, long-suffering man. Lena's contention that she should have been awarded a divorce may be answered by the statement

that her evidence did not establish any ground for a decree in her favor.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.