In re Ann Marie SUMMERS, Debtor.

**Richard J. Hanf, Chapter
7 Trustee, Appellant,**

**v.**

**Eugene Summers; David Burchard, Chapter 13 Trustee for the Estate of Eugene Summers; Ann Marie Summers; Charles E. Sims, Chapter 7 Trustee for the Estate of Aurora Summers, Appellees.**

**BAP No. EC–01–1391–PBMA.
Bankruptcy No. 99–26917–B–7.
Adversary No. 00–2384.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 21, 2002.

Filed May 16, 2002.

Byron Lee Lynch, Redding, CA, for Richard J. Hanf, Chapter 7 Trustee.

Stanley A. Zlotoff, Bluer & Zlotoff, San Jose, CA, for Eugene Summers.

Before: PERRIS, BRANDT and MARLAR, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

The bankruptcy court in this case declared that certain real property owned jointly by debtor and her husband, Eugene Summers (husband), is held in a joint tenancy and that husband's interest in that property is his separate property. Debtor's chapter 7[1] trustee appeals, arguing that the property is community property, and therefore is property of debtor's bankruptcy estate. The questions are whether property acquired in California by spouses through a deed that shows the spouses as

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

joint tenants is joint tenancy or community property and whether use of community funds to acquire property as joint tenants is a transmutation. We conclude that the bankruptcy court correctly determined that debtor and husband hold the property as joint tenants and that there was no transmutation. Therefore, we AFFIRM.

## FACTS

The facts are not in dispute. Debtor and husband were married at the time they purchased a parcel of real property in 1994. They made a $10,000 down payment, which came from their savings and a personal injury award husband had received, and signed a note for the remainder of the $116,000 purchase price. The parties took title to the property as joint tenants with their adult daughter. Both debtor and husband signed the deed, which recited that the seller granted the property

TO EUGENE SUMMERS AND ANN MARIE SUMMERS, HUSBAND AND WIFE AND AURORA SUMMERS, AN UNMARRIED WOMAN, ALL AS JOINT TENANTS.
EUGENE SUMMERS AND ANN MARIE SUMMERS, HUSBAND AND WIFE, HEREBY ACCEPT THE INTEREST HEREIN CONVEYED TO THEM AS JOINT TENANTS WITH AURORA SUMMERS, AN UNMARRIED WOMAN.

Plaintiff's Trial Brief at 3.

Debtor, husband and Aurora Summers have each filed separate bankruptcy petitions. The trustee in debtor's case took the position that the interest debtor and husband have in the property is community property, which became property of debtor's estate under § 541(a)(2). Husband claims that he holds a joint tenancy interest with debtor and Aurora, which interest does not become property of debtor's estate. Husband brought this action to determine the respective interests of the parties in the property.

After a trial, the bankruptcy court concluded that debtor and husband hold the property as joint tenants, and therefore husband's interest is not property of debtor's bankruptcy estate. The trustee appeals.[2]

## ISSUE

Whether the bankruptcy court erred in determining that debtor and husband hold property as joint tenants, rather than as community property, where they acquired the property by a deed transferring the property to them as joint tenants with a third party.

## STANDARD OF REVIEW

■ There are no disputed issues of fact. The only question is what rule of law applies, which is a question of law subject to de novo review. *See Preblich v. Battley*, 181 F.3d 1048, 1051 (9th Cir.1999) (conclusions of law reviewed de novo).

## DISCUSSION

■ Property of the estate includes all legal and equitable interests of the debtor

**2.** The bankruptcy court entered a memorandum decision dated April 18, 2001, explaining the reasoning for the decision, and an order consistent with that decision. The adversary proceeding included additional issues besides a determination of the interests in the property, so the order was not a final order. In May 2001, the trustee sought reconsideration of the court's property interest determination.

The court entered a memorandum decision on August 3, 2001, disposing of that motion for reconsideration. On that same date, the court also entered a judgment under Fed. R.Civ.P. 54(b), finally determining the interests of the parties in the property. The trustee timely filed his notice of appeal from that final order.

in property as of the date of the petition. § 541(a). It also includes:

All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

§ 541(a)(2). Although federal law determines what is property of the bankruptcy estate, state law determines what interest the debtor has in property as of the commencement of the case. *In re Mantle*, 153 F.3d 1082, 1084 (9th Cir.1998).

The trustee argues that the property at issue in this case is community property and therefore property of debtor's estate because (1) Cal.Fam.Code § 760 provides that, "[e]xcept as otherwise provided by statute," property acquired by married persons during marriage is community property, this property was acquired during the marriage, and there is no statute to the contrary; or (2) the property was acquired with community property funds and is therefore presumed to be community property.

■ Although § 760 provides that property is community property unless otherwise provided by statute, that section only provides for a rebuttable *presumption* that property acquired during marriage is community property. *See Haines v. Haines*, 33 Cal.App.4th 277, 39 Cal. Rptr.2d 673, 681 (1995). This presumption can be overcome by evidence that the parties agreed to hold the property as joint tenants, such as a deed showing that the spouses took title to property as joint tenants. *Haines*, 39 Cal.Rptr.2d at 682; *Es-*

*tate of Petersen*, 28 Cal.App.4th 1742, 34 Cal.Rptr.2d 449, 454 (1994); *In re Pavich*, 191 B.R. 838, 844 (Bankr.E.D.Cal.1996). "A declaration in a deed or other title instrument that the parties take the subject property as joint tenants raises a presumption that the married couple intended to take title in joint tenancy." *In re Rhoads*, 130 B.R. 565, 567 (Bankr.C.D.Cal. 1991). *See also Trimble v. Coffman*, 114 Cal.App.2d 618, 251 P.2d 81, 83 (1952); Cal.Evid.Code § 662. Thus, the fact that there is no other statute so providing does not preclude a determination that the property is held in joint tenancy.

Further, there are other statutes that are relevant here. Cal.Fam.Code § 750 recognizes that married persons in California may hold property "as joint tenants or tenants in common, or as community property, or as community property with a right of survivorship." Cal.Civ.Code § 683(a) provides that a joint tenancy is created "by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy. . . ." Those two statutes allow married persons to agree to take title to property as joint tenants.

■ The trustee also argues that the property is community property because it was acquired with community property funds. He is correct that, ordinarily, property acquired with community property is also community property. *Tischhauser v. Tischhauser*, 142 Cal.App.2d 252, 298 P.2d 551, 554 (1956). However, "when the husband and wife with community funds take title to property as joint tenants, the form of conveyance destroys the presumption that the property is community and that, consequently, the joint tenancy stands as such, the interest of each spouse being separate property, unless the spouses intended that it should remain community

property." 15A Am.Jur.2d *Community Property* § 56 (2000) (footnote omitted). *Accord Siberell v. Siberell,* 214 Cal. 767, 7 P.2d 1003 (1932) (property taken by deed showing spouses as joint tenants, purchased with community funds, characterized as joint tenancy). The presumption that the title reflects the parties' intent cannot be overcome simply by evidence of the source of the funds used to purchase the property. *Blankenship v. Blankenship,* 212 Cal.App.2d 736, 28 Cal.Rptr. 176, 178–79 (1963).

█ In this case, debtor and husband took $10,000 of community funds and used it as a down payment on a parcel of real property that had a purchase price of $116,000. The property was acquired during the marriage. Thus, it was subject to the rebuttable presumption that it was community property. However, the deed by which they acquired the property recited that they took the property with their adult daughter as "joint tenants." Thus, the presumption that the property was community property was overcome by the fact that they took the property by a deed that showed them as joint tenants.[3] The title presumption cannot be overcome simply by showing that the funds used to purchase the property were community funds. Therefore, the property was acquired as joint tenancy property.

The trustee argues that the presumption of title does not apply, because the use of community property funds as a down payment on the real property was an attempt to transmute community property to separate property, which was ineffective because it did not comply with the requirements for transmutation set out in Cal. Fam.Code § 852(a).[4] Husband argues that the title presumption controls over the transmutation requirements, and that if the transmutation requirements control, they were met here.

█ The requirements for transmutation set out in § 852(a) apply only to interspousal transactions or agreements. *Marriage of Barneson,* 69 Cal.App.4th 583, 81 Cal.Rptr.2d 726, 733 (1999); *Haines v. Haines,* 33 Cal.App.4th 277, 39 Cal.Rptr.2d 673, 683 (1995); 1 William W. Bassett, *California Community Property Law* § 4:37 (3d ed.2001) (Fam.Code § 852 "brought about a radical change in the law of interspousal agreements and transmutations"). A transmutation is "an interspousal transaction or agreement which works a change in the character of the property...." *Haines,* 39 Cal.Rptr.2d at 683.

█ Acquisitions of property are not necessarily transmutations. "[S]pouses can indicate their intent with respect to

---

3. There is no evidence in this case to rebut the presumption that the title accurately reflects that parties' intent to hold the property as joint tenants. *See In re Rhoads,* 130 B.R. 565, 567 (Bankr.C.D.Cal.1991).

4. Married persons in California may, "by agreement or transfer,"

  (a) Transmute community property to separate property of either spouse.
  (b) Transmute separate property of either spouse to community property.
  (c) Transmute separate property of one spouse to separate property of the other spouse.

Cal.Fam.Code § 850. Transmutations are subject to certain statutory requirements:

  A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.

Cal.Fam.Code § 852(a). This statute requires that the signed writing contain "language which expressly states that the characterization or ownership of the property is being changed." *Estate of MacDonald,* 51 Cal.3d 262, 272 Cal.Rptr. 153, 794 P.2d 911, 918 (1990).

the character of the property *initially* by specifying the form of title in which it is held, or spouses can *later transmute* the character of the property as between each other." *Id.* at 682 (emphasis supplied). Thus, where spouses acquire property initially, they can specify in the title how that property is intended to be held. Once spouses own property, the character of ownership can be effectively transmuted only by following the requirements of § 852(a).

There are no California cases specifically addressing when transmutation occurs or when the requirements of § 852(a) must be met. However, application of § 852(a) only to interspousal transactions, rather than to acquisitions of property from third parties, is consistent with the legislative purpose of the statute. Before § 852(a) was enacted, California law allowed for conversion of separate property into community property and vice versa "at any time by oral agreement between the spouses." *Woods v. Security First Nat'l Bank of Los Angeles,* 46 Cal.2d 697, 299 P.2d 657, 659 (1956). The purpose of § 852(a) was to "increas[e] certainty in the determination whether a transmutation has in fact occurred." Law Revision Commission Comment.

> The new law has as its primary purpose the elimination of ex-post facto disagreements, misunderstandings, and uncertainties. The law overrules all law previously allowing oral or informal transmutations of personal property. Real property *transfers between spouses* now should be executed following all the usual rules and formalities of transfers of real property between any other persons or entities.

1 William W. Bassett, *California Community Property Law* § 4:37 (3d ed.2001) (emphasis supplied). There is nothing in the legislative history that indicates an intent to change the rule that, in acquiring property during a marriage, spouses can show their agreement to take the property as joint tenants by explicitly taking title as joint tenants. *See* 32 CAL.JUR.3D *Family Law* § 406 (1994) (character of property fixed at time it is acquired; that character continues until changed in manner recognized by law, such as by agreement between spouses to transmute it).

Further, this interpretation makes sense in the context of transactions by which spouses acquire property from third parties. If the trustee's theory were correct, then nearly every property transaction involving acquisition of property during a marriage would require compliance with § 852(a) in order to give effect to an intent of the parties that the acquired property should be held in some form other than community property. Thus, whenever spouses bought an automobile, the title would have to comply with the specificity requirements of § 852(a), if the spouses intended the automobile to be held other than as community property. There is no indication in the statute or the case law for such a broad application of § 852(a).

It also makes sense when one considers the requirement of § 852(a) that the writing evidencing the transmutation be "made, joined in, consented to, or accepted" by the spouse whose interest is "adversely affected." § 852(a). Where spouses use community property funds to acquire new property that they desire to hold in a joint tenancy, it is not apparent whose interest is being adversely affected.

The cases discussing § 852(a) involve interspousal transfers. For example, in *Estate of Bibb,* 87 Cal.App.4th 461, 104 Cal. Rptr.2d 415 (2001), the court held that the requirements of § 852(a) were met where the husband had signed a grant deed transferring his separate property interest

in real property to himself and his wife as joint tenants. In *Marriage of Barneson*, 69 Cal.App.4th 583, 81 Cal.Rptr.2d 726 (1999), a husband's attempted transfer of his separately owned stock to his wife was held not to meet the specificity requirements of § 852(a). The court in that case stressed that the requirements of § 852(a) "necessarily arise only in the context of transfers of property between spouses." *Id.* at 733. *Accord In re Roosevelt*, 87 F.3d 311 (9th Cir.1996), *overruled on other grounds, In re Bammer*, 131 F.3d 788 (9th Cir.1997) (spouses acquired real property during marriage and took title as joint tenants; later marital agreement under which the husband and wife agreed that property would be the wife's separate property was sufficient to effect transmutation under § 852(a)).

The spouses in *Estate of MacDonald*, 51 Cal.3d 262, 272 Cal.Rptr. 153, 794 P.2d 911 (1990), also engaged in an interspousal transfer. In that case, the husband had a retirement fund in which his wife had a community property interest. *Id.* at 914. Thereafter, the community funds were deposited into individual retirement accounts (IRAs) titled solely in the husband's name. *Id.* at 913. This was a transmutation, subject to the requirements of § 852(a), because the parties did not acquire new property from a third party but instead merely changed the form of the pension fund into IRA accounts. The change of title to the husband's name was an attempt to transmute the pension fund from community property to a pension fund belonging solely to the husband.

There was no interspousal transfer in this case. Debtor and husband took $10,000 of community property and applied it toward the $116,000 purchase price of real property. This was not a change in form of the property; it was the acquisition of entirely new property from a third party. That does not constitute a trans-mutation, and the transaction was therefore not subject to the requirements of § 852(a).

The trustee makes bankruptcy policy arguments for why § 852(a) should apply in this case. However, because property interests in bankruptcy are determined according to state law, we must look to state law to determine those interests. Bankruptcy policy arguments cannot change state law requirements, absent some specific Bankruptcy Code provision. The trustee does not point to any such provision here.

Because the acquisition of the real property in this case was not an attempted transmutation, § 852(a) does not apply. The bankruptcy court did not err in so holding.

## CONCLUSION

California law recognizes that spouses can acquire property as joint tenants rather than as community property. Husband and debtor acquired the property at issue as joint tenants. The fact that they used community property funds for the acquisition and the general presumption under California law that property acquired during marriage is community property are not sufficient to defeat the creation of a joint tenancy under Cal.Civ.Code § 683(a), when spouses agree to acquire property in joint tenancy and the property is conveyed to them in joint tenancy.

The acquisition of the real property in this case was not an attempted interspousal transmutation of community property into joint tenancy property, and therefore the requirements of § 852(a) do not apply. Thus, the bankruptcy court did not err in concluding that the property is joint tenancy property. Accordingly, we AFFIRM.