[No. F020756. Fifth Dist. Oct. 12, 1994.]

Estate of WILLIAM STANLEY PETERSEN, Deceased.
JAMES C. ORR, Petitioner and Appellant, v.
LORETTA VICTORIA PETERSEN, Objector and Respondent.

**COUNSEL**

James C. Orr, in pro. per., for Petitioner and Appellant.

Richard L. Olson for Objector and Respondent.

**OPINION**

**STONE (W. A.), J.**—Decedent, William Stanley Petersen (William), and respondent, Loretta Victoria Petersen (Loretta), were married for 32 years prior to his death on February 26, 1992. William is also survived by his only child from a previous marriage, Shirley Ann Orr, her husband who is the executor of William's estate, appellant James C. Orr, and their two children. Loretta has two daughters from a previous marriage, Lenetta Huxley and Shirley Fries Spencer.

In his will, executed July 27, 1990, William states he is married to Loretta, but no bequest is made to her. It provides that all "jewelry, clothing,

household furniture and furnishings, personal automobiles, and other tangible articles of a personal nature" belonging to William or "any interest in such property" shall go "to SHIRLEY ANN ORR, CATHERINE ANN ORR, JAMES ROBERT CAMPBELL ORR, LENETTA HUXLEY and SHIRLEY FRIES SPENCER in equal shares as they shall agree, or as my Executor shall determine if they do not agree." It further provides for the residue of William's estate "including my bank accounts" to be likewise distributed. The will makes no specific reference to the distribution of any real property.

In an "AMENDED PETITION TO DETERMINE TITLE TO AND REQUIRE TRANSFER OF PERSONAL PROPERTY TO ESTATE" pursuant to Probate Code[1] section 9860, subdivision (a)(4),[2] appellant claimed the estate owned certain real and personal property.

On July 8, 1993, Loretta filed a "MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE ADJUDICATION OF ISSUES" in which she claimed all of the property in which appellant claimed a one-half community property interest had passed to her upon William's death pursuant to her right of survivorship as reflected in written documents of title, and, therefore, the estate obtained no ownership interest in the property upon William's death.

The trial court granted Loretta's motion for summary judgment on September 7, 1993. The court found in pertinent part: (1) appellant presented no admissible evidence to refute that ownership was as reflected in the documents of title; and (2) no "transmutation agreement" was required to create a right of survivorship in two annuity contracts. On appeal we are concerned with title and ownership of those two annuity contracts, the family residence, and funds held in a money market account.

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

[2] Section 9860 provides:

"(a) The personal representative or any interested person may file a petition requesting that the court make an order under this chapter in any of the following cases:

"(1) Where the decedent while living is bound by a contract in writing to convey real property or to transfer personal property and dies before making the conveyance or transfer and the decedent, if living, could have been compelled to make the conveyance or transfer.

"(2) Where the decedent while living binds himself or herself or his or her personal representative by a contract in writing to convey real property or to transfer personal property upon or after his or her death and the contract is one which can be specifically enforced.

"(3) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another.

"(4) Where the decedent died having a claim to real or personal property, title to or possession of which is held by another.

"(b) The petition shall set forth the facts upon which the claim is based."

DISCUSSION

The principles of appellate review following the entry of summary judgment are well settled. This court (1) identifies the issues as framed by the pleadings; (2) determines, based upon admissible evidence presented by affidavits, whether the moving party has negated the opponent's claims; and (3) decides whether the opposition has demonstrated the existence of a triable, material factual issue which requires a trial. (*Kim* v. *Sumitomo Bank* (1993) 17 Cal.App.4th 974, 978-979 [21 Cal.Rptr.2d 834]; *Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174, 1178-1179 [214 Cal.Rptr. 746].)

In this proceeding and for the purpose of analyzing a summary judgment, appellant, as petitioner, stands in the shoes of a plaintiff. Loretta, as objector, stands in the shoes of a defendant.

A decedent's estate includes all the decedent's personal property wherever located and all the decedent's real property located in California. (§ 6600, subd. (a).) Upon the death of a married person, one-half of the community property belongs to the surviving spouse and the other half belongs to the decedent. (§ 100.) Property which is excluded from probate includes: (1) property in which the decedent held an interest as a joint tenant or life tenant or other interest terminable upon the decedent's death (§ 6600, subd. (b)(1)); (2) sums remaining on deposit at the time of death in a multiple party account to the extent those sums belong to the surviving party upon death of the decedent. (§ 5302, § 6600, subd. (b)(2)); (3) property which has been disposed of by provision for nonprobate transfer in a written instrument (§ 5000); and (4) community property which has been disposed of by nonprobate transfer provided both spouses have consented to such transfer in a written instrument. (§§ 5010, 5011, 5022.)

 Appellant contends the property at issue in this case is community property, one-half of which belongs to Williams's estate and is subject to probate. Loretta contends the property at issue falls into one or more of the categories of property which is not subject to probate and, therefore, belongs to her.

I. *The Residence*

William purchased the residence with a Veteran's Administration loan prior to his marriage to Loretta. In March 1960, he executed a "General Assignment" which reflects title to the residence was transferred from William to William and Loretta, "Husband and Wife, as joint tenants." The "General Assignment" was recorded with the Fresno County Recorder on

March 30, 1960. When the loan was paid off in 1983, a grant deed was recorded which reflects transfer of the property from the Department of Veterans Affairs of the State of California to William and Loretta "Husband and Wife, as joint tenants."

Two presumptions arise in determining the character of the residence. First, property which is acquired by a husband and wife by a written instrument in which they are so described is presumed to be community property *unless the instrument specifically states otherwise.* (Civ. Code, § 5110, italics added.) The grant deed specifically states the property is joint tenancy property which rebuts the community property presumption found in Civil Code section 5110.

Second, when determining the nature of real property upon the death of a spouse, there is a rebuttable presumption that the property is as described in the deed. (*Estate of England* (1991) 233 Cal.App.3d 1, 5 [284 Cal.Rptr. 361].) Appellant has the ultimate burden of rebutting this presumption (*ibid.*) and the burden on motion for summary judgment of presenting evidence sufficient to establish a triable issue of fact.

With respect to the residence, the trial court found, "None of the evidence cited by appellant is either admissible or sufficient to overcome the presumption raised by the deed itself which clearly states that the property was held in joint tenancy form."[3]

Appellant does not challenge the trial court's determination that his evidence was inadmissible. He claims the trial court erred in relying upon the rule stated in *Estate of England, supra,* 233 Cal.App.3d 1, and instead, should have applied the rule regarding the burden of proof in *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 212 [259 P.2d 656]. He refers to the following language without elaboration, " 'Whether the evidence against the presumption is sufficient to overthrow it, is a question of fact.' . . ."

As we have already observed, appellant does not contend the trial court erred when it found his evidence opposing summary judgment was inadmissible. Necessarily, without admissible evidence to rebut the title presumption, no question of fact remains regarding ownership of the residence. The undisputed evidence establishes title in joint tenancy form. Loretta was entitled to judgment as a matter of law that sole ownership of the residence passed to her independent of probate upon the death of William.

---

[3]It appears the court was relying upon Civil Code section 5110.730 which requires a written express declaration in order to transmute real or personal property.

## II. *The Annuities*

In May 1991, William and Loretta purchased a "Single Deposit Deferred Annuity Contract" from Metropolitan Life Insurance Company. They deposited $73,000 into the annuity account. Both William and Loretta signed the application which identified William as "annuitant" and "owner" and Loretta as "joint owner."

The annuity contract explains its terms in the form of answers to commonly asked questions. In response to the question "What happens if you or the annuitant dies before income payments start?" the contract provides:

"After we receive proof of death and a properly completed claim form we will pay the account balance (as of the date of settlement) or permit the payee to choose one of our available income plans. We may pay the account balance by placing it in an account that earns interest to which the payee will have immediate access.

" . . . . . . . . . . . . . . . . . . . . . . . .

"If there is more than one owner, at the death of the first owner payment will be made to the surviving owner. *If the deceased owner's spouse is the surviving owner, then the surviving spouse will become the owner.*" (Italics added.)

The funds used to purchase the annuity came from a joint account with Security Pacific National Bank. On the portion of the signature card for the bank account which provides for designation of the form of account ownership the box for "joint tenants" was checked. The box for "community property" was not checked.

On January 30, 1992, William and Loretta purchased a second "Single Deposit Deferred Annuity Contract" from Metropolitan Life Insurance Company. They deposited $70,875 into the annuity account. Both William and Loretta are identified as contract owners. The terms of the annuity contract are identical to the contract previously purchased by William and Loretta with respect to payment upon death of an owner.

The joint tenancy bank account with Security Pacific National Bank was also the source of funds used to purchase the second annuity contract.

Civil Code section 5110.730 (now Fam. Code, § 852) provides in part: "(a) A transmutation of real or personal property is not valid unless made

in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."

In *Estate of MacDonald* (1990) 51 Cal.3d 262 [272 Cal.Rptr. 153, 794 P.2d 911], the California Supreme Court considered the requirement of a written transmutation and the sufficiency of such a writing. The MacDonalds had both previously been married and had children from those marriages. After several years of marriage, Mrs. MacDonald discovered she was terminally ill. She wanted to leave her separate property to her children. The MacDonalds obtained legal and financial advice and divided their property into separate estates before her death. One of the items they apparently did not address was Mr. MacDonald's pension plan benefits in which Mrs. MacDonald possessed a community property interest. Upon his retirement, Mr. MacDonald deposited the funds from these benefits into three individual retirement accounts (IRA). The accounts were solely in the name of Mr. MacDonald, with the designated beneficiary of each being a revocable living trust which had been created by the pension plan. Robert's children, in turn, were the beneficiaries of that living trust. The forms for the IRA accounts contained a space for the signature of a spouse who was not designated as the sole primary beneficiary whereby the spouse was to indicate consent to the designation. Mrs. MacDonald signed the consent form. Upon her death, the executrix of her estate petitioned to establish her one-half interest in the IRA accounts.

The issue was whether there had been an effective waiver of her community property interest or a transmutation of community property into the separate property of her husband. The court held her signature on the space below the consent paragraph did not satisfy Civil Code section 5110.730, subdivision (a).

■ "[A] writing signed by the adversely affected spouse is not an 'express declaration' for the purposes of section 5110.730(a) *unless* it contains language which expressly states that the characterization or ownership of the property is being changed." (*Estate of MacDonald, supra,* 51 Cal.3d at p. 272, italics added.)

Although the writing need not contain the words "transmutation," "community property" or "separate property," there must be language that expressly states the character or ownership of the spouse's interest is being changed. (*Estate of MacDonald, supra,* 51 Cal.3d at p. 273.)

The defect in the writing in *MacDonald* was its ambiguity: "It is not possible to tell from the face of the consent paragraphs, or even from the

face of the [documents] as a whole, whether decedent was aware that the legal effect of her signature might be to alter the character or ownership of her interest in the pension funds. . . ." (*Estate of MacDonald, supra*, 51 Cal.3d at pp. 272-273.)

██ Relying upon *Estate of MacDonald*, appellant argues the contracts do not satisfy the requirements for a valid transmutation under Civil Code section 5110.730. However, we note several important distinctions between *MacDonald* and this case. First, the issue here is not whether the annuity contracts were sufficient to transfer ownership from the community to Loretta as her separate property, but rather, whether the contracts were sufficient to establish a nonprobate transfer by right of survivorship.

It is undisputed that despite the designation of the Security Pacific account as joint tenancy, the moneys deposited into the account were community funds. The funds retained their character as community property when they were used to purchase the annuity contracts. In other words, both William and Loretta retained their respective community property interest in the funds so long as both were alive. Upon the death of either, the terms of the contracts required Metropolitan Life to pay the balance in the annuity account to the surviving spouse. The annuity contracts were community property with a right of survivorship. The character or ownership of the funds was not altered or transmuted when William and Loretta purchased the annuities. Ownership of the funds changed as a result of William's death.

Finally, unlike the consent paragraph in *Estate of MacDonald*, the right of survivorship in the annuity contracts is clear and unambiguous. It states, "If there is more than one owner, at the death of the first owner payment will be made to the surviving owner. If the deceased owner's spouse is the surviving owner, then the surviving spouse will become the owner."

Appellant cites no authority which precludes a husband and wife from entering into a contract which provides for the surviving spouse to retain ownership of property previously owned jointly by the community. Section 5203 recognizes that a "joint account of husband and wife with right of survivorship" can be created by the use of words in substantially the following form or to the same effect as: ". . . 'This account or certificate is owned by the named parties, who are husband and wife, and is presumed to be their community property. Upon the death of either of them, ownership passes to the survivor.' " (§ 5203, subd. (a)(4).) Subdivision (b) of section 5203 provides the substance of the relationship will prevail over the form of language: "Use of the form language provided in this section is not necessary to create an account that is governed by this part. If the contract of

deposit creates substantially the same relationship between the parties as an account created using the form language provided in this section, this part applies to the same extent as if the form language had been used."

Funds remaining in a joint account with a right of survivorship belong to the surviving party upon the death of a party to the joint account "as against the estate" absent clear and convincing evidence the parties intended otherwise. (§ 5302, subd. (a).) Funds remaining in an account which provides for payment on death are likewise not subject to probate. (§ 5302, subd. (b).)

Appellant contends these provisions of the Probate Code have no application. He argues the annuities are not contracts "of deposit of funds between a depositor and a financial institution" as the term "account" is defined in section 5122, subdivision (a) because Metropolitan Life is not a financial institution. A "financial institution" is defined in section 40 as "a state or national bank, state or federal savings and loan association or credit union, or *like organization*." (Italics added.) Appellant claims Metropolitan Life is not a financial institution, but rather is an insurance company. Metropolitan Life is not a bank, savings and loan or credit union; however, the funds were held on deposit in substantially the same manner and for the same purpose as funds deposited in such an institution. For the purpose of determining whether the funds were deposited in an account with a right of survivorship subject to nonprobate transfer, Metropolitan Life is a "like organization."

Section 5000 explicitly recognizes the validity of nonprobate transfers upon death provided "in an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, *account agreement*, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employee benefit plan, trust, conveyance, deed of gift, marital property agreement, or *other written instrument of a similar nature* . . . ." (Italics added.) Such "written provisions" include instructions that "money or other benefits due to, controlled by, or owned by a decedent before death shall be paid after the decedent's death to a person whom the decedent designates" in the written instrument. (§ 5000, subd. (a)(1).)

The Law Revision Commission comment, 53 West's California Annotated Probate Code, section 5000 (1994 pocket supp.) page 17, states section 5000 "is intended broadly to validate written instruments that provide for nonprobate transfers on death. . . ." and should not be limited to the types of written instruments listed in the section. The annuity contracts at issue here fit the broad description of section 5000 and the written instructions for payment to the survivor upon the death of the other owner or spouse should be given effect.

Chapter 2 of the Probate Code pertains to "Nonprobate Transfers of Community Property." It became operative January 1, 1993, and applies "regardless of whether the provision for transfer of the property was executed by the person, or written consent to the provision for transfer of the property was given by the person's spouse, before, on, or after January 1, 1993." (§ 5014, subd. (a).)

Section 5011 provides:

"Notwithstanding any other provision of this part, the rights of the parties in a nonprobate transfer of community property on death are subject to all of the following:

"(a) The terms of the instrument under which the nonprobate transfer is made.

"(b) A contrary state statute specifically applicable to the instrument under which the nonprobate transfer is made.

"(c) A written expression of intent of a party in the provision for transfer of the property or in a written consent to the provision."

The Law Revision Commission comment to section 5011 provides:

"Section 5011 establishes the principle that the rules in this chapter only apply in the absence of other governing provisions.

"Subdivision (a) recognizes that the terms of the instrument may define the rights of the parties. See also Section 5012 (community property rights independent of transfer obligation).

"Subdivision (b) makes clear that the general rules set out in this chapter are not intended to override other state statutes that are narrowly drawn to govern rights under specific named instruments. It should also be noted that this chapter cannot override preempting federal law. See, e.g., Ablamis v. Roper, 937 F.2d 1450 (9th Cir. 1991) (ERISA precludes testamentary disposition of community property interest of non participant spouse).

"Subdivision (c) makes clear that an expression of intent of the spouses in directing a nonprobate transfer of their interests in community property prevails over the default rules in this chapter." (Cal. Law Revision Com. com., Deering's Ann. Prob. Code, § 5011 (1994 pocket supp.) p. 31.)

Section 5022, subdivision (a) states, ". . . a spouse's written consent to a provision for a nonprobate transfer of community property on death *is not a*

*transmutation of the consenting spouse's interest in the property.*" (Italics added.) Written consent includes written joinder in a provision for nonprobate transfer. (§ 5010.) Although there must be "joint action by both spouses in writing," the written consent "need not satisfy the statutory requirements for a transmutation. . . ." (Cal. Law Revision Com. com., Deering's Ann. Prob. Code, § 5010 (1994 pocket supp.) p. 30.)

The Law Revision Commission comment to section 5022 explains:

"[This section] is consistent with the result in Estate of MacDonald, 51 Cal.3d 262, 794 P.2d 911, 272 Cal.Rptr. 153 (1990). A consent to a nonprobate transfer is in effect a consent to a future gift of the person's interest in community property, and is subject to the legal incidents provided in this chapter. *Until the gift is complete, however, it remains community property and is part of the community estate for purposes of division of property at dissolution of marriage until the consent becomes irrevocable by the death of either spouse.* See Section 5030 (revocability of written consent). However, if the consent specifies a clear intent to transmute the property, the expression of intent controls over this section. [¶] See Section 5011(c) (governing provision of consent)." (Cal. Law Revision Com. com., Deering's Ann. Prob. Code, § 5022 (1994 pocket supp.) p. 33, italics added.)

The annuity contracts were entered into jointly by William and Loretta and their consent to the nonprobate transfer by right of survivorship is written and express. No contrary intent is reflected in the contracts.

Whether the annuities are characterized as "joint accounts between husband and wife" within the meaning of section 5302, as "written instruments for nonprobate transfer of property" within the meaning of section 5000, or as "written instruments for nonprobate transfer of community property" within the meaning of section 5011, there was no transmutation of community property.

The language in the annuity contracts which provides for payment to the survivor upon the death of the other owner or spouse is sufficient to establish a nonprobate transfer of funds to respondent.[4]

---

[4]For the first time at oral argument appellant contended the applications for the annuities reflect by their terms that William intended his community property share to pass pursuant to his will upon his death. This argument may be disregarded since it was not timely made. (*People* v. *Byers* (1979) 90 Cal.App.3d 140, 149-150 [153 Cal.Rptr. 249].) However, we address the claim to point out its lack of merit.

Appellant cites that portion of the applications which provide for the designation of "Primary" and "Contingent" beneficiaries. Just below the lines upon which beneficiaries are

### III. *The Money Market Account*

 The statement of account of the money market fund with Metlife Securities Inc., in the amount of $3,790.19 identifies William and Loretta as joint tenants.

Funds on deposit in a joint account which is owned by a husband and wife are presumed to be community property. (§ 5305, subd. (a).) This presumption can be rebutted by a written agreement, separate from the deposit agreement, that expressly provides the funds are not community property. (§ 5305, subd. (b)(2).) The question here becomes whether the designation of joint tenancy on the statement of account is sufficient to overcome the community property presumption and to establish a joint tenancy right of survivorship as a matter of law. The trial court concluded the account statement "made it clear it was held in joint tenancy form" even though it was purchased with community funds.

Unlike the terms of the annuity contracts, the money market statement of account does not clearly and unambiguously establish a right of survivorship. Nor does it contain a "written joinder" or "written consent" to a nonprobate transfer of community property. (See § 5010 et seq.)

Our reading of *Estate of MacDonald, supra,* 51 Cal.3d at pages 272-273, compels a conclusion that the reference to joint tenancy on the account

to be designated, the applications state: "For payment due upon owner's death. If [no beneficiary] is named, the owner's estate will be paid. If the annuitant dies, and is not the owner, the owner will be paid."

According to appellant, because William was an owner, and no beneficiary was named, his estate should have received his one-half interest in the annuities. Respondent contends the language which provides for payment to the owner's estate applies only if there is one owner/annuitant and no beneficiary is named. Because Loretta remains as an owner, the contract provides for payment to her.

Appellant's interpretation of the language in the applications nullify the contracts' terms which provide for payment of the account balances upon the death of an owner to a surviving owner. Respondent's construction, on the other hand, is consistent with and gives meaning to the contracts' provisions. Contradictory or inconsistent provisions of a contract are to be reconciled by interpreting the language in such a manner that will give effect to the entire contract. (Civ. Code, §§ 1641, 1652; *Siligo* v. *Castellucci* (1994) 21 Cal.App.4th 873, 880-881 [26 Cal.Rptr.2d 439].) A contract term should not be construed to render some of its provisions meaningless or irrelevant. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 827-828 [274 Cal.Rptr. 820, 799 P.2d 1253].)

Even assuming arguendo the applications contain language which could be construed to allow for payment other than as set forth in the contracts, there is no evidence William did not understand the terms of the contracts which explained the disbursement of proceeds upon the death of an owner when there are co-owners. To the extent appellant contends William read the language as having the meaning appellant now asserts, he has failed to provide sufficient proof. The will has no reference to annuity proceeds. The only other evidence on the subject is appellant's self-serving declaration which the court properly ruled inadmissible.

statement does not satisfy the requirement of an express written declaration pursuant to Civil Code section 5110.730. First, there are no signatures on the statement. Second, the account statement does not reveal that the legal effect of the joint tenancy designation was to alter the character or ownership of community funds. Third, the statement does not indicate William and Loretta consented to such a change.

The account statement does not establish as a matter of law that Loretta is entitled to ownership of the money market funds independent of probate as surviving joint tenant. However, the reference to joint tenancy on the account statement does raise a triable issue of material fact concerning the form of ownership and character of the funds.[5]

## DISPOSITION

That portion of the judgment which determines the residence and annuities not to be subject to probate is affirmed. That portion of the judgment which adjudicates the issue of ownership of the money market account is reversed. The parties are to bear their respective costs on appeal.

Ardaiz, P. J., and Thaxter, J., concurred.

---

[5]Evidence may reveal other documents such as a signature card or fund application form on which William and Loretta designated the form of ownership.