332 F.3d 1240
 In re Ann Marie SUMMERS, Debtor.
Richard J. Hanf, Chapter 7 Trustee, Appellant,
v.
Eugene Summers, Appellee, and
David Burchard, Chapter 13 Trustee for the Estate of Eugene Summers; Ann Marie Summers; Charles E. Sims, Chapter 7 Trustee for the Estate of Aurora Summers.
 No. 02-16146.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 15, 2003.
 Filed June 20, 2003.
 
 Byron Lee Lynch, Redding, CA, for the appellant.
 Stanley Zlotoff, San Jose, CA, for the appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel, Perris, Brandt and Marlar, Bankruptcy Judges, Presiding.
 Before CANBY, KLEINFELD, and RAWLINSON, Circuit Judges.
 OPINION
 RAWLINSON, Circuit Judge.
 
 
 1
 This case requires us to determine whether the requirements of California's transmutation statute, Cal. Fam.Code § 852(a), must be met when realty is transferred from a third party to spouses as joint tenants. We affirm the decision of the Bankruptcy Appellate Panel ("BAP"), that the transmutation statute does not apply in such a circumstance, and that the property in issue is therefore held in joint tenancy rather than as community property.
 
 
 I. BACKGROUND
 
 
 2
 During their marriage, Eugene and Ann Marie Summers, along with their daughter Aurora Summers, purchased a parcel of real estate with a $10,000 down payment. Eugene and Ann Marie used their savings as well as money from a personal injury award for the down payment.[1] The deed stated that the Summerses were acquiring the property as joint tenants. The deed specifically conveyed the property:
 
 
 3
 TO EUGENE SUMMERS AND ANN MARIE SUMMERS, HUSBAND AND WIFE AND AURORA SUMMERS, AN UNMARRIED WOMAN, ALL AS JOINT TENANTS.
 
 
 4
 EUGENE SUMMERS AND ANN MARIE SUMMERS, HUSBAND AND WIFE, HEREBY ACCEPT THE INTEREST HEREIN CONVEYED TO THEM AS JOINT TENANTS WITH AURORA SUMMERS, AN UNMARRIED WOMAN.
 
 
 5
 Eugene, Ann Marie, and Aurora eventually filed separate bankruptcy petitions. Ann Marie's bankruptcy filing preceded Eugene's. Richard Hanf, the trustee in Ann Marie's bankruptcy case, contended that the subject property was a community asset and, therefore, became property of Ann Marie's bankruptcy estate. After a trial, the bankruptcy court ruled that the realty was held in joint tenancy. The BAP affirmed the bankruptcy court's decision. Hanf v. Summers (In re Summers), 278 B.R. 808 (9th Cir. BAP 2002).
 
 
 II. STANDARD OF REVIEW
 
 
 6
 We "examine the bankruptcy court's conclusions of law de novo and its factual findings for clear error." Einstein/Noah Bagel Corp. v. Smith (In re BCE West, L.P.), 319 F.3d 1166, 1170 (9th Cir.2003) (citation omitted). "Decisions of the BAP are reviewed de novo." Id. (citation omitted).
 
 
 III. DISCUSSION
 
 A. Joint Tenancy Nature of the Property
 
 7
 "It is well established that state law determines the nature and extent of a debtor's interest in property." Abele v. Modern Fin. Plans Svcs., Inc., (In re Cohen), 300 F.3d 1097, 1104 (9th Cir.2002) (citations, internal quotation marks, and alterations omitted). Cal. Fam.Code § 803(c) establishes that for a property "acquired by husband and wife by an instrument in which they are described as husband and wife, the presumption is that the property is the community property of the husband and wife, unless a different intention is expressed in the instrument."
 
 
 8
 Pursuant to Cal. Fam.Code § 760, "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." "Thus, there is a general presumption that property acquired during marriage by either spouse other than by gift or inheritance is community property unless traceable to a separate property source." Haines v. Haines (In re Marriage of Haines), 33 Cal.App.4th 277, 289-90, 39 Cal.Rptr.2d 673 (1995) (citation omitted).
 
 
 9
 The California Court of Appeal has concluded that this community property presumption is rebuttable. In particular, "when such property was acquired and title taken in joint tenancy during marriage, it is presumed to be community property; that presumption can be rebutted only by a showing of an agreement or understanding to the contrary." Tucker v. Tucker (In re Marriage of Tucker), 141 Cal.App.3d 128, 132, 190 Cal.Rptr. 127 (1983). "[V]irtually any credible evidence may be used to overcome [the general community property presumption], including... showing an agreement or clear understanding between parties regarding ownership status ..." Haines, 33 Cal. App.4th at 290, 39 Cal.Rptr.2d 673. "For example, spouses can indicate their intent with respect to the character of the property initially by specifying the form of title in which it is held, or spouses can later transmute the character of the property as between each other." Id. at 291, 39 Cal. Rptr.2d 673. Whether a property is characterized as separate property or community property "is determined at the time of its acquisition." Grinius v. Grinius (In re Marriage of Grinius), 166 Cal.App.3d 1179, 1186, 212 Cal.Rptr. 803 (1985) (citations omitted). "[P]roperty which is acquired by a husband and wife by a written instrument in which they are so described is presumed to be community property unless the instrument specifically states otherwise." Orr v. Petersen (Estate of Petersen), 28 Cal.App.4th 1742, 1747, 34 Cal.Rptr.2d 449 (1994) (citation omitted) (emphasis in the original).
 
 
 10
 California law supports the bankruptcy court's and the BAP's conclusion that the community property presumption is rebutted when a married couple acquires property from a third party as joint tenants. In California, "[p]roperty cannot be held both as community property and in either a joint tenancy or a tenancy in common at the same time." Mitchell v. Mitchell (Estate of Mitchell), 76 Cal. App.4th 1378, 1385, 91 Cal.Rptr.2d 192 (1999) (citations omitted). "[A]bsent a contrary statute, and unless ownership interests are otherwise established by sufficient proof, record title is usually determinative of characterization." Haines, 33 Cal.App.4th at 291, 39 Cal.Rptr.2d 673 (citation omitted). In California, the community property presumption "is overcome when a declaration in a deed or other title instrument indicates spouses take title to property as joint tenants." Bernstein v. Pavich (In re Pavich), 191 B.R. 838, 844 (Bankr.E.D.Cal.1996) (citations omitted). Where "[t]he grant deed specifically states the property is joint tenancy property," this "rebuts the community property presumption..." Estate of Petersen, 28 Cal. App.4th at 1747, 34 Cal.Rptr.2d 449. "[T]he general community property presumption is rebutted by the affirmative act of specifying joint tenancy title in the deed. Property taken in joint tenancy is presumed to be held as joint tenancy property, with each spouse owning an undivided one-half interest." Chase Manhattan Bank v. Jacobs (In re Jacobs), 48 B.R. 570, 573 (Bankr.S.D.Cal.1985) (citations omitted). "A declaration in a deed or other title instrument that the parties take the subject property as joint tenants raises a presumption that the married couple intended to take title in joint tenancy." Rhoads v. Jordan (In re Rhoads), 130 B.R. 565, 567 (Bankr.C.D.Cal.1991) (citation omitted).
 
 
 11
 There is therefore a rebuttable presumption that "where the deed names the spouses as joint tenants ... the property was in fact held in joint tenancy...." Hansen v. Hansen, 233 Cal.App.2d 575, 594, 43 Cal.Rptr. 729 (1965) (citations omitted).
 
 
 12
 The source of funds for acquisition of the joint tenancy property is not dispositive. "[E]vidence of the source of the funds used to purchase the property is insufficient, in and of itself, to rebut the joint-tenancy presumption." Hansford v. Lassar, 53 Cal.App.3d 364, 372, 125 Cal. Rptr. 804 (1975) (citations omitted). "When property is conveyed to a husband and wife as joint tenants, the form of the conveyance is such as to destroy the statutory presumption that the property is community even though the consideration for such conveyance consists of community funds or assets...." Lovetro v. Steers, 234 Cal.App.2d 461, 468, 44 Cal.Rptr. 604 (1965) (citations omitted). As a result, "[t]he presumption arising from the form of the joint tenancy deed cannot be rebutted solely by evidence as to the source of the funds used to purchase property." Hansen, 233 Cal.App.2d at 594, 43 Cal. Rptr. 729 (citation omitted).
 
 
 13
 In this case, the deed specifically conveyed the property to Eugene, Ann Marie, and Aurora Summers as joint tenants. Although the deed described Eugene and Ann Marie Summers as "Husband and Wife," it simultaneously specified that they were acquiring the property as joint tenants. Id. This specific conveyance bestowed joint tenant status upon the Summerses, irrespective of the "Husband and Wife" verbiage. See Estate of Petersen, 28 Cal.App.4th at 1747, 34 Cal.Rptr.2d 449. Eugene Summers' testimony during the bankruptcy trial confirmed the Summerses' intention to possess the property as a joint tenancy, and Hanf presented no evidence to the contrary.
 
 
 14
 B. Transmutation Formalities — The Applicability of Cal. Fam.Code § 852(a)
 
 
 15
 Cal. Fam.Code § 852(a) provides that "[a] transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."
 
 
 16
 California courts have defined "[a] transmutation [as] an interspousal transaction or agreement that works a change in the character of the property." Cross v. Cross (In re Marriage of Cross), 94 Cal.App.4th 1143, 1147, 114 Cal.Rptr.2d 839 (2001) (citation omitted) (emphasis added).
 
 
 17
 In Haines, the California Court of Appeal considered a quitclaim deed from a wife to her husband in which the husband acquired an advantageous property interest, potentially through undue influence. 33 Cal.App.4th at 284, 39 Cal.Rptr.2d 673. The court characterized this interspousal transaction as a transmutation, which required compliance with Cal. Fam.Code § 852 because the transaction was between spouses and worked a change in the character of the property vis-a-vis the spouses. Id. at 293, 39 Cal.Rptr.2d 673.
 
 
 18
 Bolton v. MacDonald (Estate of MacDonald), 51 Cal.3d 262, 272 Cal.Rptr. 153, 794 P.2d 911 (1990), and McGirr v. Barneson (In re Marriage of Barneson), 69 Cal.App.4th 583, 81 Cal.Rptr.2d 726 (1999), are not to the contrary. MacDonald involved an interspousal transaction, not the purchase of property from a third party. See MacDonald, 51 Cal.3d at 262, 264-66, 272 Cal.Rptr. 153, 794 P.2d 911. In particular, the issue was whether there was a valid transmutation of a community property interest in pension funds from Mrs. MacDonald to her husband when she signed a beneficiary designation form. Id. at 265-66, 272 Cal.Rptr. 153, 794 P.2d 911.
 
 
 19
 Similarly, Barneson is of no assistance to Hanf. In Barneson, the California Court of Appeal considered the transmutation of securities, in which the husband had a separate property interest, into his wife's separate property. 69 Cal.App.4th at 587, 81 Cal.Rptr.2d 726. In the specific context of an interspousal transaction, the court in Barneson reiterated the requirement of an express declaration where one of the spouses is adversely affected by an alteration in the property's character. Id. at 588, 81 Cal.Rptr.2d 726.
 
 
 20
 California courts have applied the rationale of MacDonald solely in the context of interspousal transactions. For example, in Bibb v. Bibb (Estate of Bibb), 87 Cal. App.4th 461, 104 Cal.Rptr.2d 415 (2001), the court considered a deed transferring the husband's separate property interest in a lot and apartment complex to himself and his second wife, as joint tenants. Id. at 464-65, 104 Cal.Rptr.2d 415. Applying MacDonald, the court concluded that, since the grant deed contained the standard statutory language required for an intent to transfer the husband's joint tenancy interest, the transmutation formalities were satisfied. Id. at 468, 104 Cal. Rptr.2d 415. The court noted that, "since `grant' is the historically operative word for transferring interests in real property, there is no doubt that [the husband's] use of the word `grant' to convey the real property into joint tenancy satisfied the express declaration requirement of section 852, subdivision (a)." Id. at 468-69, 104 Cal.Rptr.2d 415 (citation omitted).
 
 
 21
 Our reading of California law leads to the conclusion that the transmutation requisites had no relevance to the conveyance in this case. There simply was no interspousal transaction requiring satisfaction of the statutory formalities.
 
 
 22
 We also reject Hanf's contention that any transaction involving spouses' purchases of properties from third parties must include express declarations with respect to the funds used to purchase the property. The funds themselves were not the subject of an interspousal transaction because they were never transferred from one spouse to the other. More importantly, the source of the funds used to purchase property does not alter the property's character. See Lovetro, 234 Cal. App.2d at 468, 44 Cal.Rptr. 604.
 
 
 IV. CONCLUSION
 
 
 23
 Applying California law, we conclude that a third party conveyed joint tenancy interests to Eugene and Ann Marie Summers, a transaction to which the transmutation statute does not apply. See In re Cross, 94 Cal.App.4th at 1147, 114 Cal. Rptr.2d 839. The third-party deed specifying the joint tenancy character of the property rebutted the community property presumption, and rendered California's transmutation statute inapplicable.
 
 
 24
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The parties agree that the funds used to purchase the property were community assets