Filed 12/3/24  Marriage of Smart CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of DENNIS R. SMART and MARGARET L. SMART. | |
| DENNIS R. SMART,<br><br>        Appellant,<br><br>v.<br><br>MARGARET L. SMART,<br><br>        Respondent. | A167635<br><br>(Mendocino County Super. Ct. No. SCUK-CVFL-2019-72817) |

Dennis Smart appeals from judgment in a marital dissolution action, raising "three distinct but related issues."  Dennis contends the trial court erred by not issuing a written statement of decision, by allowing tracing of Margaret Smart's separate property, and by failing to account for money purportedly "wrongfully taken from a third-party trust" by Margaret.[1]  Finding no error, we affirm.

## BACKGROUND

Dennis and Margaret married on December 28, 1968, and separated on November 1, 2018.

---

[1] For clarity and convenience, we refer to the parties by their first names.  We intend no disrespect.

1

In 1995, they formed the Dennis and Margaret Smart 1995 Trust (the Smart trust). The Smart trust declares that "all property described in Schedule A is . . . community property and shall retain its character as such notwithstanding the transfer to this trust." Schedule A identifies certain assets that "are the community property of the Settlors and were transferred to the Trustee on the dates indicated," including the parties' residence in Ukiah, California and a Mendo-Lake Credit Union checking account associated with "member number [ending in] 007"—referred to as "Account 007."

The parties also executed a "Community Property Agreement," which provides that all the parties' property, "both real and personal, wherever situated, whether held in either or both of their names, is community property, regardless of how title is held."

In 2015, Margaret's godmother, Clara Murphy, passed away, leaving Margaret as the successor trustee to the Clara Murphy Revocable Trust (the Murphy trust). The Murphy trust provided for distribution of the estate's residuary to Margaret and her two, then-living siblings in equal shares. After Clara's passing, Margaret distributed $744,532.23 to each sibling and distributed $952,909.29 to herself. Margaret deposited most of those funds into account 007, but, after the parties' separation, withdrew approximately $650,000 to purchase real property in Arcata, California.

The dissolution action proceeded to trial on January 30, 2023, and concluded four days later on February 2. At the end of the third day of trial, and prior to closing arguments, the court announced its "intention to give a statement of decision . . . orally from the bench, unless there's an objection to that." Dennis's counsel represented, "We were going to ask for a statement in the decision," to which the court responded, "Did you require a written

statement of decision from the court?"  After a further exchange, the court indicated it would "make my ruling from the bench" and asked if Dennis's counsel wanted the court "to sit in . . . chambers and type it out, too?" Dennis's counsel answered, "Of course not.  There's just procedures [f]or objections to the SO[D].  And it's just we're cool with whatever."  Margaret's counsel followed, "I'm fine with Your Honor's process."

After closing arguments on February 2, 2023, the court issued an oral statement of decision from the bench.  The court directed Margaret's attorney "to prepare judgment and order conforming" to the court's ruling.  Other than two minor clarifying questions, neither counsel raised any objections.

Subsequently, on February 7, Dennis filed a request for a written statement of decision per Code of Civil Procedure section 632,[2] identifying 20 controverted issues.  On February 9, Margaret filed an objection to the request, restating the parties in-trial agreement to an oral decision.  That same day, the court issued a minute order:  "Here, the parties were specifically informed at trial that the court intended to issue an oral statement of decision from the bench, which the parties agreed to.  The matter was recorded, and the parties may request a copy of the recording."

On February 16, Dennis filed an objection to the court's oral statement of decision, which the court overruled by minute order issued the next day.

On February 17, the court executed the proposed judgment that Margaret had submitted to the court and served on Dennis.  The judgment was filed and served on February 21, effective, nunc pro tunc, as of February 2, the last day of trial.  In relevant part, the court found that the monies Margaret received from the Murphy trust and transferred to account 007

_____

[2] All further undesignated statutory references are to the Code of Civil Procedure.

3

remained separate property—including those monies Margaret used to buy the Arcata property—and calculated the distribution and reimbursement of funds accordingly.

Dennis appealed.

## DISCUSSION

On appeal, Dennis asserts reversible error in the trial court's failure to issue a written statement of decision and "address the objection to its oral statement of decision." Dennis also challenges the use of tracing as violative of Probate Code section 5305, subdivision (b)(1), and argues that even if tracing were permissible, Margaret's expert "did not account for at least $200,000 of monies that were wrongfully taken" from the Murphy trust and thus should have been treated as income (i.e., community property) instead of inheritance (i.e., separate property). We find these arguments without merit.

## I.  Statement of Decision

A statement of decision explains "the factual and legal basis for [the trial court's] decision as to each of the principal controverted issues at trial." (§ 632.) Section 632 permits "any party appearing at the trial" to request a statement of decision, which must "be in writing, unless the parties appearing at trial agree otherwise." Section 634 further provides, "if the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, 'it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue.' " (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*), quoting *Culbertson v. Cizek* (1964) 225 Cal.App.2d 451, 465–466.)

California Rules of Court, rule 3.1590(d)-(g) clarifies this "two-step procedure for requesting a statement of decision and preserving objections for

4

pursuit on appeal." (*Thompson*, *supra*, 6 Cal.App.5th at p. 982.) "First, following the court's announcement of its tentative decision, section 632 requires a party to specify, in timely fashion and in proper form, 'those controverted issues as to which the party is requesting a statement of decision.' " (*Ibid.*, fn. omitted.) "Second, section 634 requires that any omissions or ambiguities in the statement of decision must be 'brought to the attention of the trial court either prior to entry of judgment or in conjunction with' a new trial motion (§ 657) or a motion to vacate the judgment (§ 663), thus allowing the court to respond to objections before the taking of an appeal." (*Ibid.*)

"When a party requests a statement of decision, it must be prepared . . . ." (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 127, citing cases.) But the failure to issue a written statement of decision is subject to harmless error review; it is not "reversible per se" as Dennis claims. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 ["a trial court's error in failing to issue a requested statement of decision is not reversible per se, but is subject to harmless error review"].) A party may also waive their right to a written statement of decision. (*Whittington*, at pp. 129–130 [finding waiver where counsel affirmatively stated, " '[u]h-huh' " and " '[t]hat's fine' " in response to the court's suggested oral procedure in lieu of a written statement of decision and did not otherwise object].)

Dennis's sole contention is that the court's statement of decision should have been written instead of oral, even though he concedes his counsel's comments at trial suggest waiver: "[I]t does appear that the exchange between the court and [a]ppellant's counsel could be construed as a waiver of the requirement of written statement of decision." Without citation to authority, Dennis then persists in asserting error because counsel's apparent

5

waiver was not "unequivocal," and he "did not waive *the right to object* to any statement of decision be it oral or written." (Italics added.)

We find that Dennis's on-record exchange with the court demonstrates his agreement to an oral statement of decision and serves as a waiver of his ability to subsequently compel a written one. In any event, assuming arguendo, Dennis's statement, "we're cool with whatever," was too equivocal to constitute a waiver, or the court should have more fully responded to Dennis's objection, any error was harmless and does not require reversal.

### A. Agreement to Oral Statement of Decision

At the conclusion of the third day of trial, the court informed the parties of its intent "to give a statement of decision . . . orally from the bench, unless there's an objection to that." The following exchange ensued:

"MR. TURRI [Dennis's counsel]: We were going to ask for a statement [of] decision. I didn't know if you wanted to have that sooner than later. I can handle this early as Monday. So maybe you would even help with your tentative not help you, maybe allow it to be addressed for like that. So we'll get that to come back. And I'm talking about the day.

"THE COURT: I was intending on giving an oral statement of decision from the bench. Did you require a written statement of decision from the Court?

"MR. TURRI: We will be asking for a written.

"THE COURT: Okay.

"MR. TURRI: Can we call your oral [a tentative]?

"THE COURT: Well, no, I mean, I would make my ruling from the bench that I based on what I've heard so far, it would be lengthy, and it will be recorded. Do you want me to sit in my chambers and type it out, too?

6

"MR. TURRI: Of course not. There's just procedures [f]or objections to the SO[D]. And it's just we're cool with whatever.

"MS. BULL [Margaret's counsel]: I'm fine with Your Honor's process.

"THE COURT: Okay. All right. So with all that, I think we'll be in recess unless there's anything else to talk about in chambers or off the record or anything like that."

Dennis's counsel then stated the parties were working on stipulations, for which the court thanked them, "I think it's gone really smoothly so far," and concluded the day's proceedings.

This record does not reflect an equivocal waiver; rather the comments, "[o]f course not" and "we're cool with whatever" demonstrate Dennis's agreement to the court's oral statement of decision, to which Margaret's counsel also agreed and the court accepted.

Moreover, counsel's oral remarks that Dennis "will be asking" or was "going to ask" for a statement of decision are insufficient under section 632 because "a general, nonspecific request for a statement of decision" does not specify any controverted issues. (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1292–1293; see also *Atari Inc. v. State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 674–675 ["section 632 requires a party requesting a statement of decision to specify those controverted issues as to which it is requesting a finding"].) Nor do we see any legal basis for allowing Dennis to unilaterally revoke his agreed-upon waiver *after* receiving the court's express rulings and order for judgment. (See *In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100, 1109 [finding issue waived on appeal where a party requested a statement of decision per Family Code section 3654, but remained silent when "the trial court stated its findings and order on the record" instead of in a written statement of

7

decision]; see also *Thompson*, *supra*, 6 Cal.App.5th at p. 983 ["Because [any] procedural defect impedes the trial court's ability to fulfill its duty under section 632 and potentially undermines the effectiveness of any statement of decision it prepares as a tool of appellate review, strict adherence to both steps of the process is necessary"].)

We therefore turn to Dennis's assertion that the court erred when it "failed to address the objections to its oral statement of decision." In his objection, Dennis asserted that the court's oral decision "does not properly address the factual and legal basis for the court's decision" as to 17 controverted issues. The next day the court issued a minute order overruling Dennis's objection: "The court ruled in detail as to each point raised by petitioner and provided reasoning." Thus, Dennis's complaint that the court "failed" to rule on his objection is unfounded.

Further, "objections to a statement of decision serve a limited purpose" of avoiding "implied findings on appeal favorable to the judgment." (*Starcevic v. Pentech Financial Services, Inc.* (2021) 66 Cal.App.5th 365, 382; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134.) Here, we need not resort to implied findings because the trial court set forth its findings in its oral statement of decision. Moreover, a trial court is not "required to respond point by point to the issues posed in a request for statement of decision. The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1379–1380; see also *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124–1126.) As discussed further below, the trial court's lengthy oral statement of decision fairly discloses its determination as to the ultimate

8

facts and material issues, and it specifically addresses the issues Dennis raises on appeal.

## B. Harmless Error

Even assuming that the court's issuance of an oral statement of decision was error, Dennis has not demonstrated prejudice. As noted above, failure to issue a written statement of decision after proper request requires reversal only if it results in "a miscarriage of justice." (*F.P. v. Monier*, *supra*, 3 Cal.5th at p. 1113.) Thus, Dennis must show prejudice from the absence of a written statement of decision. (*Id.* at p. 1108; accord, *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 ["Thus, 'a "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error' "], quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Dennis suggests the error arises "in view of the equalizing payment adjudged without fully and properly characterizing and dividing the community estate . . . ." But, other than objecting to the court's use of tracing and characterization of monies received from the Murphy trust, which are separately addressed below, no prejudice is explained or asserted, and certainly none that demonstrate a "miscarriage of justice." (*Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1165 [the appellant bears the burden of showing prejudice, which "requires them to show ' "it is reasonably probable that a result more favorable to [them] would have been reached in the absence of the error" ' "].) Accordingly, any error related to the issuance of an oral rather than written statement of decision remains harmless.

9

## II. Tracing

Dennis next argues that the court improperly allowed Margaret to trace funds she received from the Murphy trust as separate property in contravention of Probate Code section 5305 despite the parties' written community property agreement and the Smart trust. We disagree.

Generally, appellate review of a trial court's finding that certain property is separate or community property " 'is limited to a determination of whether any substantial evidence supports the finding.' " (*In re Marriage of Lafkas* (2015) 237 Cal.App.4th 921, 931–932 (*Lafkas*), quoting *In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 849.) Similarly, "[w]hether the spouse claiming a separate property interest has adequately traced an asset to a separate property source is a question of fact for the trial court, and its finding must be upheld if supported by substantial evidence." (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 823, citing cases.)

However, "interpretation of the contract is subject to de novo review." (*Lafkas*, *supra*, 237 Cal.App.4th at p. 932; see also *In re Marriage of Starkman* (2005) 129 Cal.App.4th 659, 664 ["Similarly, '[i]n deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence. [Citations.] Under the circumstances, we are not bound by the interpretation given to the written instruments by the trial court' "].) "We also review the interpretation of a statute and its application to undisputed facts de novo." (*In re Marriage of Starkman*, at p. 932.)

"Funds on deposit in a joint account which is owned by a husband and wife are presumed to be community property." (*Estate of Petersen* (1994) 28 Cal.App.4th 1742, 1754, citing Prob. Code, § 5305, subd. (a).) That presumption can be overcome through the tracing of separate property,

10

"unless it is proved that the married persons made a written agreement that expressed their clear intent that the sums be their community property." (Prob. Code, § 5305, subd. (b)(1); see also *In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1483 [applying Probate Code section 5305 in a marital dissolution action].) But property that a spouse acquires by gift or bequest is separate property, even if acquired during the marriage. (Fam. Code, § 770, subd. (a)(2); *Lafkas*, *supra*, 237 Cal.App.4th at p. 931.)

According to Dennis, the community property agreement and Smart trust constitute written agreements expressing Dennis and Margaret's intent that the sums in account 007 be community property, thereby prohibiting tracing under Probate Code section 5305, subdivision (b)(1). However, the trial court found "no evidence" that Margaret's inheritance was anything other than separate property and further found that Dennis did not establish the "clear intent" required to preclude tracing. Neither the Smart trust nor the community property agreement expressly include account 007; rather, account 007 is identified only in "Schedule A" to the trust. But, as the court noted, the parties introduced two versions of schedule A, neither of which was signed by Margaret. One version of schedule A contained the handwritten note "in progress 2-11-97" next to account 007, and the other version listed real property[3] that was added to the Smart trust "in approximately 2003-

---

[3] During the marriage, Dennis inherited real property located on Gardens Avenue in Ukiah, California. Dennis's parents lived in the property during their lives, and Dennis and his brother inherited the property, in equal shares, after their passing. Dennis ultimately acquired his brother's interest in exchange for stock that Dennis also inherited from their parents. Dennis subsequently transferred the Gardens Avenue property to the Smart trust and listed it on schedule A. The court confirmed Gardens Avenue as Dennis's separate property, because "[h]alf was inherited by Dennis; the other half was purchased by assets inherited by Dennis. No evidence to the contrary was found."

2004." Thus, the court found that the parties' intent could not be "divined from the handwriting."

But the court also found Dennis's testimony regarding the parties' intent equivocal and "inherently contradictory." The court gave the example of Dennis's argument that the Gardens Avenue property was separate property even though it was listed on schedule A, transferred to the Smart trust, and subject to the community property agreement. Accordingly, substantial evidence supports the court's finding that the parties' intent was "unclear" and thus insufficient to preclude tracing under Probate Code section 5305, subdivision (b)(1).

Even applying a de novo standard, we find that neither the community property agreement nor the Smart trust constitute an express declaration sufficient to prohibit tracing or otherwise change the character of the Murphy trust funds. (*Lafkas*, *supra*, 237 Cal.App.4th at p. 938 ["An 'express declaration' is a writing signed by the adversely affected spouse 'which expressly states that the characterization or ownership of the property is being changed' "].) Understandably, neither the community property agreement nor the Smart trust reference Margaret's inheritance, which did not exist in 1995 when the documents were signed. But notably, neither document discusses the handling of bequests at all.[4] As a result, while the community property agreement and Smart trust are writings that generally provide for the treatment of funds deposited into account 007 as community property, their silence as to bequests does not show a clear intent to change the character of Margaret's inheritance in the face of Family Code section

_____

[4] Similarly, Margaret's 2015 inheritance did not exist when the parties amended and restated the Smart trust in 2001. Like the 1995 Smart trust, the 2001 amendment does not discuss the handling of bequests.

12

770. (*In re Marriage of Braud*, *supra*, 45 Cal.App.4th at pp. 822–823 ["Of course, the mere commingling of separate property and community property funds does not alter the status of the respective property interests"].) Therefore, Dennis does not establish that the trial court erred in permitting tracing of Margaret's separate property.

### III. Wrongfully Taken Monies

Noting the difference between the $744,532.23 Margaret paid each of her two siblings from the Murphy trust and the $952,909.29 that Margaret claims to have inherited, Dennis's final argument on appeal is that Margaret wrongfully claimed the $207,558.06 difference.[5] Because those funds were misappropriated, Dennis contends, Margaret should not be able to maintain them as separate property. Again, we disagree.

First, the issue of the distribution of the Murphy trust is not before us. As the trial court noted, Dennis has "a standing problem" with respect to his argument that Margaret "wrongfully" took money from the Murphy trust. Even so, the court found "there was simply no evidence presented that the money was wrongfully taken." The court recognized that Margaret received "roughly [$]200,000" more than her siblings, but "[a]gain" found "no evidence of any kind . . . that this money was anything other than inheritance and separate property." Therefore, the court concluded that the Arcata property was Margaret's separate property because Margaret purchased it using funds that were traced to her inheritance from the Murphy trust, i.e., separate property. On appeal, Dennis does not cite any evidence offered at trial that supports a different outcome.

---

[5] Mathematically, the difference between $952,909.29 and $744,532.23 is $208,377.06, not $207,588.06; however, this discrepancy is immaterial to the outcome of this appeal.

Second, "California has long held that innocent spouses cannot profit from community property acquired by fraud." (*Q-Soft, Inc. v. Superior Court* (2007) 157 Cal.App.4th 441, 450, as mod. on denial of rehg. Dec. 21, 2007.) Thus, regardless of whether Margaret properly inherited the money or improperly obtained it from the Murphy trust, the proceeds are not community property. (*Lafkas*, *supra*, 237 Cal.App.4th at p. 931.)

## DISPOSITION

The judgment is affirmed. Because Margaret did not appear on appeal, we decline to award costs in the interests of justice. (Cal. Rules of Court, rule 8.278(a)(5); *In re Marriage of D.S. and A.S.* (2023) 87 Cal.App.5th 926, 938.)

_____
DESAUTELS, J.

We concur:


_____
RICHMAN, ACTING P.J.


_____
MILLER, J.

*In re Marriage of Smart* (A167635)